Kepler v. Barker.

January, 1843, the sum of $4191.10, and this is the only error to be corrected.

As to all other matters, the referees find that the defendant's accounts became stated accounts, from the acquiescence of the plaintiff therein.

The defendant took the benefit of this improper charge, with interest thereon from January 23, 1843, and with annual rests, till 1850. The aggregate of his credits arising from this false item, may be readily ascertained by computation.

If we compute interest on $4191.10, from January 23, 1843, till March 25, 1850, at 6 per cent. per annum, making rests, on the 25th of March, in each year, agreeably to the course of dealing between the parties, the principal and interest at the latter date, will be found to amount to the sum of $6361$\frac{23}{100}$, and if to this be added interest thereon at the same rate, but without rests till May 17, 1858, the first day of the judgment term, the sum of the whole is $9469$\frac{82}{100}$.

According to the facts found by the referees in their report, this is the amount for which judgment should have been rendered, and to this extent the judgment of the court of common pleas will be affirmed, and reversed as to the residue.

SUTLIFF, C. J., and BRINKERHOFF, J., concurred; PECK and GHOLSON, JJ., dissented.

---

MARY ANN KEPLER v. HENRY BARKER.

To an action against the sheriff for the escape of a debtor imprisoned under an order of arrest, a defense that the escape occurred on account of the insufficiency of the county jail, can not be sustained.

ERROR to the court of common pleas of Hocking county. Reserved in the district court.

This was an action brought in the common pleas of Hock-

13

ing county, against the defendant, late sheriff of that county, for an escape.

To show that he was not liable for the escape, the defendant offered the following defense : " For a further answer to the said petition of the said Mary Ann Kepler, plaintiff, the said Henry Barker, defendant, saith, that for several years past, and during all the time from the arrest of the said Amos Donalson, until and after the time of his said escape, as alleged and stated in the said petition, the jail of this county has been and was wholly and notoriously insecure and insufficient to detain any person or prisoner, or to imprison or keep therein any debtor or other person, by reason of the defectiveness and insufficiency of the walls, doors and locks upon, or of the doors of said jail; of all which defects and insufficiencies, the county commissioners of this county have, for more than three years last past, had frequent notice and full knowledge; notwithstanding which, said commissioners, during all the time aforesaid, wholly failed to repair, rebuild or in any manner render said jail safe or sufficient for the imprisonment of prisoners, debtors, or other persons therein; and that on the said 20th day of August, 1859, and while the said jail remained and was in the unsafe and insufficient condition aforesaid, and because and on account thereof, and not because or on account of any negligence, remissness or other fault or inattention of the defendant, or the keeper of said jail at that time, the said Amos Donalson escaped therefrom, in the night time, by unlocking and opening the door of said jail with his hands, without the knowledge or connivance of the defendant or the keeper of said jail. And the defendant further saith that immediately after his escape, and before he could be retaken, the said Amos Donalson escaped and went beyond the limits of the State of Ohio, and ever since that time hath remained out of said state."

To this defense the plaintiff filed a demurrer, which was overruled by the court of common pleas. There having been a judgment in that court in favor of the defendant, the plaintiff filed a petition in error in the district court, which was reserved for decision in this court.

*Culver & Browne* and *Hunter & Daugherty*, for plaintiff in error :

1. The sheriff is charged with the safe keeping of prisoners. S. & C. St. 1398, sec. (3).

2. If the jail of his county is insufficient, the sheriff must transport the prisoner to the jail of an adjoining county. S. & C. St. 1399, secs. (4) and (5) ; *Ib.* 748, sec. (16).

3. If an escape is without the consent of the plaintiff, it seems that nothing but the act of God, or of the enemies of the country can excuse the sheriff. Swan's Pl. and Prec. 1064, citing 3 Blackf. 14; 4.*Ib.* 193; 10 Mass. 206 ; 24 Wend. 381 ; 6 Ohio Rep. 13.

These cases show that the rule of the English common law has not been relaxed in the United States: and they furnish conclusive authority for the reversal of this case, on the ground that the court departed from that rule.

*Henry R. Saunders*, for defendant in error :

1. The act of April 30, 1852 (S. & C. St. 748, sec. 15), has ao application to this case. It was intended for and applies only in cases arising in *new counties* not having " provided any or sufficient jails," etc.

The construction I contend for is given and put upon the act of 1824, in and by the act of 1852. The latter act was intended to apply to cases of removal of prisoners provided for in the former act—so far, at least, as counties " erected and organized for the term of five years " were concerned. Both acts related to new counties, which, after their erection and organization, have not provided any or sufficient jails, etc., and not to those in which jails once provided and sufficient, became temporarily or slightly out of repair. (See S. & C. St., p. 683, sec. 7.) The sheriff in this case had no authority to remove the prisoner to the jail of another county for safe keeping. *Campbell* v. *Hampson*, 1 Ohio Rep. 119 ; *Commissioners of Brown County* v. *Butt*, 2 Ohio Rep. 348 ; *Richardson* v. *Spence*, 6 Ohio Rep. 13 ; *Commissioners of Hamilton County* v. *Mighles*, 7 Ohio St. Rep. 109 ; Civil Code, secs. 152, 173.

2. There was no such negligence in this case as ought to render the sheriff liable. He was not, nor was the jailor in duty bound to guard the jail day and night. Nothing short of that, however, could have prevented the escape complained of; nor should the prisoner have been put in irons, or the outer door shut, to the destruction of his health, if not his life.

In England the sheriff is bound to provide a safe prison for those committed on civil process, and is not bound to confine them in the county jail. These considerations furnish the ground-work, the foundation principles of all the English decisions, so often and inappropriately referred to and relied on in this country. (See the Ohio cases cited.) Yet, in England, an officer was not liable to punishment for the escape of a person arrested upon criminal process, unless it occurred by reason of his negligence, permission or connivance. 4 Bl. Com., p. 130.

GHOLSON, J.—It is conceded by the counsel for the defendant, that the English and American authorities show that the insufficiency of the jail will not excuse the sheriff for the escape of an imprisoned debtor; the excuses for such an escape being, on principles of public policy, limited to cases of necessity, " such, for instance, as the case of a prisoner who leaves the jail when in danger of a sudden fire within the jail, or when the jail is broken by a public enemy." *Margill* v. *Taylor*, 10 Mass. 206.

But it is insisted, that owing to legislation in Ohio, and the course of decisions under that legislation, the rule is different: That a sheriff who receives an order of arrest against a fraudulent debtor, can confine only in the jail of his county, and may, therefore, place him in an insufficient and insecure jail, and if he escapes, the plaintiff must seek redress in a personal liability on the part of the county commissioners, for their negligence in not providing a sufficient and secure jail.

We are not prepared to say, that admitting the premises assumed in the argument to be correct, the conclusion arrived

at would follow.  If the sheriff could confine a debtor only in an insufficient county jail, it would not necessarily follow, that he should not be, at least primarily, liable for his escape. The safe keeping of a prisoner, depends not only on the walls, doors and locks of the prison house, but on the care and vigilance of the jailor.  Without a watchful and faithful jailor, few houses would make secure places of confinement.  What is wanting in the security of the house, may, to a great extent, be supplied by the care and vigilance of the jailor.  Wherein was the deficiency to which an escape may be attributed, is a matter of inquiry, which the plaintiff may properly claim should be left to the sheriff and the county commissioners.  It may also be observed, that if, as alleged in this case, the jail be notoriously insecure, the sheriff would be a proper party to see that the machinery of the law was put in motion, to enforce on the county commissioners a compliance with their duty to provide a sufficient jail.

We think, however, that the premises assumed in the argument of the counsel for the defendant are not correct; that the sheriff was not bound to confine his prisoner in a jail, which, in the language of his answer, " was wholly and notoriously insecure and insufficient," but might, under the 5th section of the act of 1824, " defining the duties of coroners and sheriffs in certain cases," convey him to the jail of such adjoining county, as in his opinion was the most convenient and secure.  (2 S. & C. 1397–1399.)  Nor is the operation of that act, in this particular, affected by the subsequent act of April 30, 1852, " regulating the use of jails of adjoining counties."  (1 S. & C. 748.)  The statute first enacted, in express terms, authorizes the use of the jails of adjoining counties by a sheriff, when in his county there is no sufficient jail.  The last statute requires counties, erected for more than five years, to pay a consideration for such use, showing most clearly that the use before authorized was expected to continue.

As to the limited construction claimed by counsel for the defendant to have been placed on the act of 1824, by the court, in the case of *Commissioners of Brown County* v. *Butt,*

2 Ohio Rep. 351, we need only say, that we do not understand anything in that case as applying to the act of 1824, but on the contrary, we suppose that the escape which originated the controversy, occurred prior to 1824. That case, so far as it affirmed a liability on the part of the county to the sheriff for an escape on account of an insufficient jail, has been overruled (*Commissioners of Hamilton County* v. *Mighels,* 7 Ohio St. 109); and consequently the reason given for the decision in the case of *Richardson* v. *Spencer,* 6 Ohio Rep. 13, can no longer apply. But the court in the *Commissioners of Hamilton County* v. *Mighels,* do not negative the personal liability of the commissioners, nor were the matters to which we have adverted, and particularly, that the jails of adjoining counties may be used, taken into consideration.

Whatever redress or indemnity a sheriff may have, when he has been held liable for an escape, which, he may be able to show, occurred solely from an insufficient jail, we are satisfied that as between the plaintiff and the sheriff, the rule of the common law remains unchanged by any statute or decision of this state. The decision of the court overruling the demurrer to the defense of the defendant, being opposed to that rule of the common law, must be reversed.

Judgment reversed.

SUTLIFF, C. J., and PECK, BRINKERHOFF and SCOTT, JJ., concurred.